559 A.2d 560

**R.P. CLARKE PERSONNEL, INC.**

v.

**COMMONWEALTH NATIONAL BANK, Appellant.**

**R.P. CLARKE PERSONNEL, INC., Appellant,**

v.

**COMMONWEALTH NATIONAL BANK.**

Superior Court of Pennsylvania.

Argued Jan. 31, 1989.

Filed May 23, 1989.

526

John S. Feinour, Harrisburg, for appellant (at 554) and appellee (at 561).

Marvin Beshore, Harrisburg, for appellee (at 554) and appellant (at 561).

Before WIEAND, POPOVICH and HESTER, JJ.

HESTER, Judge:

Commonwealth National Bank, situate in York, Pennsylvania, and now an affiliate of Mellon Bank, N.A. (appellant), appeals from the judgment entered by the Court of Common Pleas of Dauphin County on July 14, 1988, awarding an employment referral commission to R.P. Clarke Personnel, Inc., t/a Career Bankers, appellee.[1]

Appellant argues that the trial court erred by not directing a verdict in its favor since there was no evidence to support the alleged referral contract entitling appellee to a fee, by refusing to instruct the jury that the employment agency must be the predominant "efficient procuring cause" for hiring the job applicant in order to be entitled to receive a fee, and by admitting irrelevant and self-serving business records of appellee. Appellant also argues that the trial court improperly permitted appellee to amend its complaint to conform to the evidence introduced at trial. We find no merit in any of appellant's arguments and, accordingly, affirm.

The facts adduced at trial are as follows. In late 1983, appellant, due to its poor earnings and the consequent diminished possibilities for bonuses and security in employment, had difficulty obtaining a senior lender. Appellee, which specialized in banking placements, previously had solicited appellant for information about its job openings and had attempted to find suitable applicants whose backgrounds met appellant's requirements. At least one of appellee's referrals was hired for trust work and resulted in the payment of a referral fee. In 1983 or early 1984,

1. Appellee cross-appealed from a decision regarding calculation of damages. Our discussion of this issue appears at page 535–536, *infra.*

appellant informed appellee of its need for a senior lender. Consequently, appellee submitted several resumes.

In January, 1984, Timothy Price, a senior loan officer for an Indiana bank, wanted to return to the eastern United States for personal reasons. He simultaneously sent his resume and an introductory letter to several employment agencies that he knew, including appellee. Appellee acknowledged receipt of his resume and screened it. R. Peter Clarke, appellee's president, immediately called Mr. Price and informed him about a job opening with an anonymous bank and requested permission to submit his resume. Mr. Price assented, and appellant submitted his resume, slightly altered, along with a cover letter outlining its customary fee requirements to appellant on February 2, 1984.

Several weeks later, Mr. Clarke called appellant's personnel manager, Craig Hill, to question him about Mr. Price's resume. Mr. Hill acknowledged receipt of the resume and asked to interview Mr. Price over the telephone on March 16, 1984. Mr. Clarke then called Mr. Price and urged him to telephone Commonwealth National Bank on March 16, 1984, providing him with Mr. Hill's name and telephone number. Subsequently, Mr. Clarke confirmed with Mr. Hill that Mr. Price would call him on March 16. Mr. Hill customarily conducted telephone interviews before arranging a personal interview. Mr. Price did telephone Mr. Hill on March 16, 1984, but Mr. Hill was unavailable.

Prior to these events, on December 21, 1983, appellant had signed an employment search agreement with R.J. Evans Agency. This agreement entitled R.J. Evans to an exclusive right to present qualified candidates for sixty days in consideration for its best efforts to locate and present three qualified candidates for each job opening. R.J. Evans was entitled to a $3,000 commission upon presenting three candidates considered by appellant as qualified, regardless whether any one of them was hired. Appellee was never informed of R.J. Evans's exclusive contract with appellant.

R.J. Evans also had Mr. Price's resume and submitted it to appellant. R.J. Evans contacted Mr. Price by telephone after Mr. Clarke contacted R.J. Evans about the opening. Mr. Price informed R.J. Evans that Mr. Clarke had already spoken to him about the job opportunity with appellant, but that he had not yet been interviewed. At this point, appellant realized that both appellee and R.J. Evans were recruiting the same individual, and appellant ceased returning appellee's telephone calls. In addition, Mr. Price informed appellee that another agency was recruiting him for the position with appellant.

Subsequently, R.J. Evans set up a series of interviews for Mr. Price and made considerable effort to convince both Mr. Price and his wife of the merits of the York, Pennsylvania area and the terms offered by appellant. Mr. Price accepted the position in May, 1984.

At trial, appellee argued that appellant's actions after March 16, 1984, prevented appellee from recruiting Mr. Price, even though it attempted to make further efforts at recruitment. Mr. Hill refused to return appellee's telephone calls.

Following a jury verdict in favor of appellee, appellant filed timely motions for post-trial relief. Appellee also filed a cross-motion for post-trial relief. Pursuant to a stipulation by the parties, the trial court entered an order enlarging the record to include the requested charges by both parties, their objections, and the court's rulings on them. Post-trial motions were denied, judgment was entered, and this appeal and cross-appeal followed.

Appellant initially argues that the case should not have been submitted to the jury since there was no evidence to support the allegation that it entered into a referral contract entitling appellee to a fee for placing Mr. Price. At most, appellant continues, an initial contact was requested, but this contact was not made and an interview was never scheduled through appellee agency. Appellant insists that R.J. Evans Agency did all the work to bring the parties together and is entitled to the referral fee. It argues that

mere negotiations by a broker that do not result in bringing parties together do not entitle the broker to a commission. *See Christo v. Ramada Inns, Inc.*, 609 F.2d 1058 (3rd Cir.1979).

Appellant further argues that, as a matter of law, only one employment agency can be the efficient procuring cause of an employment transaction, and appellant can owe only one fee. *See Earp v. Cummins*, 54 Pa. 394, 93 A.M.Dec. 718 (1867). Consequently, appellant maintains that appellee's efforts to refer Mr. Price did not legally entitle the agency to a fee, since R.J. Evans Agency is entitled to the fee.

■ As to the first allegation, we concur with the trial court's determination that there was evidence from which the jury could conclude that appellant and appellee entered into a referral fee contract prior to any efforts by R.J. Evans Agency. Appellee's letter transmitting Mr. Price's resume included specific terms evidencing a referral contract. These specifics included a referral fee of twenty-five percent of Mr. Price's annual earnings, a refund if the applicant were terminated within sixty days, and submission of an invoice for payment within fifteen days if the candidate were hired. Furthermore, appellee presented evidence that prior dealings had created the understanding between the parties that, once an initial interview was solicited, appellee would undertake reasonable and necessary steps requested by appellant to present the candidate for employment and earn the contingent fee if the applicant were hired. Custom dictated that employment firms would take additional steps only at an employer's direction.

In *Correll v. Werner*, 293 Pa.Super. 88, 437 A.2d 1004 (1981), we stated: "In our Commonwealth, it has long been held only in a case where the facts are all clear, and there is no room for doubt, should the case be removed from the jury's consideration, and a motion for a directed verdict or binding instructions be granted." *Id.*, 293 Pa.Superior Ct. at 90, 437 A.2d at 1005 (citations omitted). "The question is not what inferences we could draw from the evidence, but

whether there was evidence from which the trial court could infer liability." *Colish v. Goldstein,* 196 Pa.Super. 188, 193, 173 A.2d 749, 751 (1961).

Appellee established at trial the terms of its offer and appellant's admission that it directed appellee to take steps to set up a telephone interview. Further, appellee established from prior dealings and industry custom that oral contracts were the norm and that it was understood that once a candidate was presented, the employment firm was entitled to its fee if the candidate were hired. The employment firm was expected to take further actions after the referral only if requested to do so. Therefore, we conclude that the trial court correctly determined that appellee established a sufficient factual basis upon which the jury could conclude that the parties entered into a contract and properly denied appellant's motion for a directed verdict.

■ Appellant's second argument is that the trial court erred by refusing to instruct the jury that it must first find that appellee was the predominant "efficient procuring cause" of the employment in order to award appellee a fee. Appellant relies upon *Axilbund v. McAllister,* 407 Pa. 46, 180 A.2d 244 (1962), and *Seligson v. Young,* 189 Pa.Super. 510, 151 A.2d 792 (1959), where it was held that a real estate broker who does not contribute to bringing the parties together cannot recover a commission. Appellant argues that we should follow the legal requirement adopted in other states that a competing employment agency without an exclusive contract must meet the initial requirement of not only being an efficient procuring cause, but also being the predominant efficient procuring cause, in order to obtain a fee. *See Nicastro Assoc., Inc. v. C.F. Wooding Co.,* 5 Conn.App. 244, 497 A.2d 1020 (1985) (employment agency not entitled to a fee where it only referred the individual who was ultimately hired, since the employee also came from an independent source); *Scheff v. Robertson Paper Box Co.,* 39 Conn.Sup. 135, 471 A.2d 991 (1983) (referral led to interview and employment, but no fee was earned since resume was already in company's files; there-

fore, referral was not the ultimate, efficient procuring cause of employment).

In Pennsylvania, the law is that a non-exclusive real estate broker must establish that it was an efficient procuring cause for consummating the transaction. We do not reject the analogy under Pennsylvania law between real estate contracts and employment referral contracts. However, we do reject appellant's argument that, as a matter of law, it cannot be bound by two employment referral contracts. By analogy, we note that if a real estate seller signed two concurrent brokerage contracts and a buyer were produced during the term of both, a commission would be due under the terms of each contract.

In Pennsylvania, unlike Connecticut, there is no requirement that before a non-exclusive broker can recover, it must establish it was the ultimate or predominant efficient procuring cause. However, the insertion of such a special requirement by the parties would be permissible. In the cases relied upon by appellant, the issue of whether those special types of terms were part of the contract was a question of fact for the jury. *See Axilbund v. McAllister, supra* ("special" price terms were a requirement for a bonafide prospective purchaser and whether such a requirement existed in the contract was a question of fact); *Helmig v. Rockwell Mfg. Co.*, 380 Pa. 305, 111 A.2d 118 (1955) (broker obtained steel ingots but did not satisfy the second requirement of obtaining mill time to make the ingots into sheets); *Groskin v. Moore*, 249 Pa. 242, 94 A. 1057 (1915) (broker required to sell the property and not just produce an able and willing buyer). Instantly, however, such a term was not included in the contract.

Appellant never disputed that appellee referred Mr. Price to appellant first and, thus, was a factor in procuring Mr. Price's employment. Appellee simply was not the sole cause for his employment. Appellant wishes to rely upon requirements of other jurisdictions to insert a special condition, *i.e.*, that appellee must be the predominant cause of the employment relationship, in this contract. Its argument

is that it legally can be required to pay only one fee. We disagree and decline to insert such a condition as a matter of law when there is no question that the parties did not insert such a special requirement in their fee arrangement.

Furthermore, even under the Connecticut authority, we find no basis for the jury instruction in this case. We agree with appellee that appellant's actions prevented it from being the efficient procuring cause of Mr. Price's employment. After appellant realized that Mr. Price was being recruited by both firms, it refused to deal with appellee by not returning appellee's telephone calls. Appellant was attempting to avoid its obligation to appellee by dealing only with R.J. Evans, even though appellee arranged the initial contact between the parties. Accordingly, there was no basis for giving the requested instruction under these facts.

We concur with the reasoning of *Leach v. Brothers,* 44 Pa. D. & C. 438 (1942), which involved similar facts. In *Leach,* the court stated, "[I]f the first broker has found a prospective purchaser and is in the midst of negotiations he may not be deprived of his commission by consummation through another broker, even for a price less than that the first broker was empowered to accept." *Id.* at 442. Instantly, appellee referred a suitable candidate as requested but was prevented from completing the contract.

Similarly, we are not persuaded by appellant's argument that 43 P.S. § 574(m), and 34 Pa.Code § 9.51 provide that only one placement fee can be earned between competing brokers and that the fee is earned by the broker whose professional effort resulted in the placement of the applicant. These statutory and regulatory provisions were intended to protect job seekers from unlawful practices and are not applicable to employers by their terms.

▆▆▆▆ Appellant's third contention is that the trial court committed prejudicial error by admitting irrelevant and self-serving business records of appellee. The Business Records as Evidence Act, 42 Pa.C.S. § 6108(b), provides in pertinent part:

A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time, act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

Appellant argues that the records introduced by appellee were marked by individuals other than Mr. Clarke, who was the only one who testified, and therefore no adequate foundation was laid for their admission into evidence. Appellant also argues that the introduction of these records was prejudicial since they were self-serving and concerned transactions independent from, and irrelevant to, Price's application.

In *Ganster v. Western Pa. Water Co.*, 349 Pa.Super 561, 504 A.2d 186 (1985), we stated:

[I]t is essential that no lack of trustworthiness appear in the source of information or the method or circumstances of preparation. The factors to be weighed include whether there was either motive or opportunity to prepare an inaccurate record, the period of delay prior to preparation of the record, the nature of the information recorded, the systematic checking, whether there was regularity and continuity in maintaining the records and whether the business relied on them. "In the case of records kept in the regular course of business the circumstantial guarantee of trustworthiness arises from the regularity with which they are kept." *Fauceglia v. Harry*, [409 Pa. 155, 160, 185 A.2d 598, 601 (1962)].

*Id.* 349 Pa.Super. 561, 568, 504 A.2d at 190.

Instantly, the disputed records include Sprint telephone logs, appellee's notes and records concerning Mr. Price, the contemporaneous hiring by appellant of another individual referred by appellee, and the final letter to Mr. Price setting forth the employment terms. The trial court determined that these records were kept in the ordinary course of

business, were not specially prepared or untrustworthy, and were relevant to establish the customary course of conduct between these parties in a referral. It also found that these records were relevant to establish the ultimate remuneration terms offered to Mr. Price and therefore the commission owed to appellee, if any.

An evidentiary ruling constitutes reversible error only if appellant establishes that it was error to admit the challenged evidence and that prejudice resulted. *Bessemer Stores Inc. v. Reed Shaw Stenhouse Inc.*, 344 Pa.Super. 218, 496 A.2d 762 (1985). These records were material to the issue of whether there was any understanding between the parties regarding the terms of any job referral and to the determination of appellee's efforts to refer Mr. Price. The testimony about these records indicated that they were made in the ordinary course of business. The letter of employment concerned the salary and benefits offered to Mr. Price, and thus the amount of any commission owed to appellee. All were material to the factual determination of the course of conduct by the parties and damages. We find that the trial court correctly concluded that this evidence was trustworthy and relevant.

The final argument raised by appellant is that the trial court erred in allowing appellee to conform its pleading to assert that it was owed a percentage of Mr. Price's salary and benefits, which would yield a greater sum than the percentage of base salary that appellee originally pleaded in its complaint. Appellant claims that appellee's motion was untimely and prejudicial since appellant was surprised and unexpectedly forced to defend a new issue.

The dispute whether appellee's fee, stated as a percentage of annual compensation, was determined from base salary only, or included guaranteed bonus and fringe benefits, was a factual issue that arose at trial. Pa.R.Civ.P. 1033 provides that an amendment to pleadings may be made at any time with filed consent of the parties or by leave of the court, including conforming the pleadings to the evidence introduced at trial.

Instantly, the trial court found that the amendments did not prejudice appellant since the validity of the referral contract and the consequent fee were the central factual issues of the case. Appellant clearly was on notice that both facts were in dispute. Appellee was not amending its claim to include a new cause of action or a new legal theory for recovery which surprised appellant or deprived it of a defense. Appellee only raised a new factual issue concerning determination of the amount of damages. Amendment of the ad damnum clause is permitted at any point in litigation. *Sullivan v. City of Philadelphia*, 314 Pa.Super. 381, 460 A.2d 1191 (1983). Such amendment is not an abuse of discretion. *Fudula v. Keystone Wire & Iron Works, Inc.*, 317 Pa.Super. 526, 464 A.2d 446 (1983).

Appellant's reliance upon *McDermott v. Gekas*, 404 Pa. 239, 171 A.2d 754 (1961), and *Pa. R.R. v. Pittsburgh*, 335 Pa. 449, 6 A.2d 907 (1939), is misplaced. They involved either surprise from a new cause of action or a new wrong pled under the same legal category, and both were decided under stricter pleading requirements. In addition, unreasonable delay alone is not a reason to deny a petition to amend. *Carpitella by Carpitella v. Consolidated Rail Corp.*, 368 Pa.Super. 153, 533 A.2d 762 (1987); *Brooks v. McMenamin*, 349 Pa.Super. 436, 503 A.2d 446 (1986).

Appellee's one argument on its cross-appeal is that it is entitled to a percentage of the total value of Mr. Price's compensation including moving costs, club memberships and other fringe benefits, rather than only the percentage of his base salary and guaranteed bonus awarded by the jury. This was a factual determination made by the jury concerning the intent of the parties to the contract. A finding of fact will not be disturbed on appeal unless unsupported by competent evidence or predicated on errors of law. *Eddystone Fire Co. No. 1 v. Continental Ins. Cos.*, 284 Pa.Super. 260, 425 A.2d 803 (1981). We find the jury's determination is supported by the record and will not disturb it.

Judgment affirmed.