645 A.2d 798

MICHELE MATTHEWS, INC., PLAINTIFF–RESPONDENT,
v. KROLL & TRACT, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 4, 1994—Decided July 26, 1994.

102

Before Judges KING, ARNOLD M. STEIN and RODRIGUEZ.

*David A. Laughlin* argued the cause for appellant (*Kroll & Tract*, appellants, *pro se; Mr. Laughlin* on the brief and reply letter brief).

*Laurence H. Olive* argued the cause for respondent (*Mr. Olive* on the brief).

The opinion of the court was delivered by

ARNOLD M. STEIN, J.A.D.

At the conclusion of a bench trial, Judge Walls found that defendant law firm was liable to plaintiff employment agency for a placement fee. He entered judgment against defendant for $7,150, plus costs. We affirm.

During the end of April or the beginning of May 1989, Michele Francis, the proprietor of Michele Matthews, Inc., was contacted by George Wright, a partner in defendant firm. Wright was in charge of opening defendant's new office in Newark, New Jersey, and he was interested in finding an experienced litigation secretary for the new office. Francis faxed Wright a copy of plaintiff's fee agreement.

Francis arranged for six or seven candidates to be interviewed by Wright. One of the candidates was Laticia Howell, who had been previously interviewed and tested in plaintiff's offices.

On May 5, 1989, Wright interviewed Howell and the other candidates. Wright then contacted the firm's accounting director and faxed him plaintiff's fee schedule. He did not have the authority to approve plaintiff's fee.

About a week later, Wright contacted Francis and told her that the candidate in which he was most interested was Laticia Howell, but that he could not hire her because the firm would not approve the fee. Wright asked Francis whether there was any possibility of negotiating her fee. Francis responded that she could not negotiate the fee under New Jersey law. Wright then said that he would hire someone on his own through the newspaper. He contacted Gladys Williams in the firm's New York office and asked her to put an ad in the paper.

On May 11, 1989, plaintiff sent a letter to defendant acknowledging their conversation of that day. The letter stated in pertinent part:

> After sending you six top-notch canidates [sic] for your New Jersey secretarial position, your firm unfortunately decided not to extend anyone an offer. According to our conversation, this decision was based upon the fee difference, between New York and New Jersey, and your firm's policy to pay a maximum of 15%.
>
> The canidates [sic], Laticia Howell ... find this decision very disappointing. However, all of the canidates [sic], and myself included, found you to be a pleasure in any working situation.
>
> If your firm changes its policy, please let me know. Perhaps we'll have the opportunity to work together again.

On May 17, 1989, an advertisement was placed in the *Star Ledger* seeking a secretary for defendant's Newark office. The ad, which ran for approximately two weeks, stated:

> LEGAL SECRETARY—Newark office of prestigious NYC insurance firm has position avail. for exp'd Legal Secretary/Receptionist. Excel. bnfts. Salary commensurate w/exp. PC Wordperfect. Call 201-622-3955.

Responses to the ad were directed to Williams in New York, who set up the interviews. Howell responded to the ad. She was interviewed again by Wright. She was tested in New York by Williams, along with three other individuals. Howell was offered

and accepted the position. She began working for defendant on June 5, 1989. There had been no contact between Wright and Howell until the second interview.

On June 15, 1989, defendant received from plaintiff a note and billing statement requesting payment in the amount of $7,800 based on the employment of Laticia Howell. The bottom of the billing statement provided that: "TO INSURE 90–DAY, UNCONDITIONAL GUARANTEE, FEE PAYMENT IS DUE, IN HANDS, WITHIN 30 DAYS OF PLACEMENT[']S STARTING DATE." Wright told plaintiff that he had hired Howell as a result of her response to the ad in the paper and not as a result of the initial interview. He refused to pay the fee.

Defendant claimed that in order to avoid litigation regarding Howell's employment, Howell was asked to leave and was given some time to find another job. On June 27, 1989, Wright wrote a letter advising plaintiff that Howell would be leaving defendant's employ as soon as she secured another position. On July 19, 1989, forty-four days after she began work, Howell left defendant's employ and began working with an architectural firm.

There are no New Jersey cases dealing with the issue of whether an employment agency is entitled to a fee for setting up an interview with a prospective employer where the employee is eventually hired allegedly on the basis of the employee's independent inquiry.

Other jurisdictions analogize the employment agency issue to the real estate broker's claim for a commission. *Management Recruiters of Marysville, Inc. v. Brown Group Recreational Prods., Inc.*, 34 *Ohio.App.*3d 72, 517 *N.E.*2d 240, 243 (1986); *Nicastro Assocs., Inc. v. C.F. Wooding Co.*, 5 *Conn.App.* 244, 497 *A.*2d 1020, 1021 (1985); *R.P. Clarke Personnel, Inc. v. Commonwealth Nat'l Bank*, 384 *Pa.Super.* 524, 559 *A.*2d 560, 564 (1989).

In New Jersey, where a real estate broker brings together a buyer and a seller, and there is no substantial break in the ensuing negotiations, the broker is ordinarily entitled to a commission because he is the efficient cause of the sale. *Geo. H.*

*Beckmann, Inc. v. Charles H. Reid & Sons, Inc.,* 44 *N.J.Super.*
159, 168, 130 *A.*2d 48 (1957). Similarly, in order for a broker to
earn a commission, he must establish that he was the "efficient
producing cause" of the sale, at least in a sense of causing the
seller to negotiate with a buyer produced by the broker who is
ready, willing and able to perform and the sale is consummated
without a substantial break in the ensuing negotiations. *De
Benedictis v. Gerechoff,* 134 *N.J.Super.* 238, 242, 339 *A.*2d 225
(1975); *see also Weichert Co. Realtors v. Ryan,* 128 *N.J.* 427, 438–
41, 608 *A.*2d 280 (1992) (where a broker is the procuring cause of
the sale and he provides a buyer with information about the
property with the expectation that the buyer would pay a fee and
buyer intended to pay a fee, the broker is entitled to compensa-
tion).

The judge concluded that the reason for Howell's dismissal—to
avoid litigation—weakened defendant's argument that the subse-
quent employment of Howell was not connected to the efforts by
plaintiff. He said:

> Those are not the acts—those are not the factual acts of a person acting in my
> context—in my—from a reasonable—a reasonable circumstance of saying, we
> never had anything to do with her before, we're only hiring her because of the ad,
> but to say get out of the way.because we have litigation coming down the pike, as
> though to avoid litigation, is [in] my opinion an admission that there was—that
> there was some connection, a substantial connection, between the first interview
> and the subsequent hiring, and I so find. Consequently, under those circum-
> stances, I find, therefore, because there is that subsequent and substantial connec-
> tion between the first interview and the resulting employment, that the defendants
> are liable to the plaintiff for a placement fee.

There is support in the record for the conclusion that Howell's
subsequent employment by defendant was a result of Wright's
favorable impression of Howell in the initial interview. At the
time of the second interview, Wright had previously met with
Howell and he was already familiar with her demeanor and skills.
A trier of fact could conclude that plaintiff was the procuring
cause of Howell's employment because of this initial favorable
impression.

The judge concluded that credibility played an important part in
his decision. He stated: "This case turns not on law but from

facts and determination. And I find from the facts and determinations what I've said. It's a matter of credibility." The judge further stated:

> The defendant alleges, well we only hired her because of our ad, and I'm not quite sure that is so because the fact situation is such that it belies that. And that is why the reason expressed by Mr. Wright is important. His reason to me suggests, and I find that he acknowledges that the employment was in part—substantially in part—due to a prior favorable impression rendered by Laticia Howell when she first came on board, and she first came on board because of the activity of . . . Mrs. Francis. It is not a question that the dismissal is with or without cause, that's not the point. The reason for dismissal weakens the argument by defendant that the factual circumstances lead to a conclusion that the subsequent employment of Laticia Howell was devoid of substantial connections with the efforts made by Mrs. Francis.

■  Our scope of review is limited to a determination of the trial judge's decision of whether the trial judge's findings could reasonably have been reached on sufficient credible evidence present in the entire record. *R.* 2:11–3(e)(1)(A); *Rova Farms Resort, Inc. v. Investors Ins. Co.*, 65 *N.J.* 474, 484, 323 *A.*2d 495 (1974). "That the case may be a close one or that the trial court decided all evidence or inference conflicts in favor of one side has no special effect." *State v. Johnson*, 42 *N.J.* 146, 162, 199 *A.*2d 809 (1964). Deference and "due regard" should be given to the opportunity of the trial court to listen to witnesses and judge their credibility. *Id.* at 161, 199 *A.*2d 809. There is substantial credible evidence in the record supporting the judge's finding that Howell was hired by defendant as a result of plaintiff's activities.

■  Defendant claims it is not liable for the commission even if plaintiff was the procuring cause of the employment because plaintiff did not adhere to the fee schedule it filed pursuant to *N.J.S.A.* 34:8–51b(1) which sets forth the duties and obligations of employment agencies.

Plaintiff's filed fee schedule provides, "AN UNCONDITIONAL, 90–DAY GUARANTEE WILL BE GIVEN ON ALL PLACEMENTS TO CLIENT FIRMS, IF THE FEE IS RECEIVED WITHIN 30 DAYS OF THE APPLICANT[']S STARTING DATE." The bill sent to defendant stated, "TO INSURE 90–DAY, UNCONDITIONAL GUARANTEE, FEE PAYMENT IS

DUE, IN HANDS, WITHIN 30 DAYS OF PLACEMENT[']S STARTING DATE." The fee schedule initially faxed to defendant provided for a ten-day period for payment. Plaintiff concedes that the thirty-day period applies.

Defendant also claims that it was not obligated to pay plaintiff's fee within thirty days just to request it back thereafter. Howell's starting date was June 5, 1989, and plaintiff was advised by letter dated June 27, 1989, that Howell would be leaving defendant's employ. Defendant claims that because Howell was terminated within the ninety-day trial period as set forth in plaintiff's filed fee schedule, it was not required to pay a placement fee and that the payment clause is ambiguous and should be construed in its favor, since plaintiff was the drafter of the clause.

Plaintiff agrees that had defendant paid the fee within the thirty-day period, it would have been entitled to a refund because Howell was terminated within ninety days.

Francis interpreted the language of the guarantee as follows:

What it means is that I will give an unconditional guarantee to anybody who hires an applicant of mine if they didn't like the color of their socks and they wanted to let them go. During that 90 days, I would let that person go and refund 100% the fee if it's ... received in the time specified on the bill.

Defendant did not pay the fee within thirty days after Howell started work. Payment of the fee within thirty days was a condition precedent to entitlement of the ninety-day guarantee. *See Moorestown Mgmt., Inc. v. Moorestown Bookshop, Inc.*, 104 *N.J.Super.* 250, 262, 249 *A.*2d 623 (Ch.Div.1969). Defendant, a law firm, was not an unsophisticated party and it can be presumed that Wright understood the language of the guarantee.

The judge addressed the guarantee. He stated:

Now here we have in this case a condition volunteered by [Ms. Francis] that if a person resigns or is terminated within 90 days of your employment of her, and if you've paid me my fee within 30 days, I'll give you back your fee—give you back 100% of your fee. And the attorneys and I have gone back and forth in discussing hypothetical circumstances but really, that's what they are, hypothetical circumstances because they really have no great meaning to our understanding of this case. In this case, we have a circumstance where a person leaves because she's asked to leave by a partner of her firm for the express purpose, and according to him, of avoiding litigation. Now, I'm urged to say well, the reasons are immaterial.

A vague or ambiguous clause in a contract should be construed against the drafter of the contract. *In re Miller's Estate,* 90 *N.J.* 210, 221, 447 *A.2d* 549 (1982). This provision is not ambiguous. The provision clearly states that if the employer does not pay within thirty days, it is not entitled to the ninety-day guarantee. Defendant claims that an ambiguity arises because the payment clause does not state that an employer must still pay the fee even if it decides to terminate the employee within thirty-five days of the applicant's starting date. Not so. The clause clearly states that payment, not just notification of termination, must be made within thirty days. We will not make a better or different contract for the parties than they made for themselves. *Hartford Fire Ins. Co. v. Riefolo Constr. Co.,* 161 *N.J.Super.* 99, 114, 390 *A.2d* 1210 (App.Div.1978), *aff'd,* 81 *N.J.* 514, 410 *A.2d* 658 (1980). Moreover, Howell's employment terminated forty-four days, not within thirty days, after she began working with defendant.

Affirmed.