IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ronald P. Cooley, individually and　:
derivatively on behalf of the  Lofts at　:
1234 Condominium Association,　:
　　　　　Appellant　:
　:
　　　　v.　:　No. 1668 C.D. 2018
　:　ARGUED:  November 14, 2019
Lofts at 1234 Condominium　:
Association, Thomas Marrone, and　:
Echo Volla　:

BEFORE:　HONORABLE P. KEVIN BROBSON, Judge
　　　　　HONORABLE ELLEN CEISLER, Judge
　　　　　HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER　　　　　　　　　　　　FILED:  March 13, 2020

Ronald P. Cooley appeals from the November 14, 2018 Order of the Court of Common Pleas of Philadelphia County (Trial Court) granting the Motion for Summary Judgment filed by Thomas Marrone and Echo Volla.  For the reasons that follow, we affirm the Trial Court's Order.

## Factual Background

This appeal arises from a contentious dispute among condominium owners in a three-story building known as The Lofts at 1234 Condominium (The Lofts), located at 1234 Hamilton Street in Philadelphia, Pennsylvania.  The Lofts consists of 17 condominium units and a garage with 17 parking spaces.  The Lofts at 1234 Condominium Association (Association) was created on November 15, 2005 by the recording of the Declaration of The Lofts (Declaration) by The Lofts' declarant, 1234 Hamilton, L.P. (Declarant).  Leonidas Addimando was Declarant's managing

partner and his company, Alterra Property Group, was the property manager for The Lofts until mid-2015.

The Association adopted its By-Laws in 2005. Declarant recorded a First Amendment to the Declaration with the City of Philadelphia Department of Records (Department of Records) on October 30, 2006. The First Amendment subdivided The Lofts' garage into 17 individual parking spaces. Declarant adopted the First Amendment pursuant to Section 3.4 of the Declaration, wherein Declarant had reserved the right to subdivide the garage.

Declarant executed a Revised and Restated Declaration on December 22, 2006 and recorded it with the Department of Records on February 6, 2007. The Revised and Restated Declaration reflected the First Amendment's subdivision of the garage and removed the language in Section 3.4 of the Declaration that gave Declarant the ability to subdivide the garage.

Declarant ceded control of the Association to its three-member Executive Board in 2011. Declarant sold the last unit it owned to Mr. Cooley in July 2013.

On September 24, 2013, Ms. Volla and Mr. Cooley were elected to the Association's Executive Board. On January 28, 2015, Mr. Marrone was appointed to serve as the third member of the Executive Board and as the Association's President.

On April 10, 2015, Mr. Marrone executed a Second Amendment to the Declaration (Roof Deck Amendment) and recorded it with the Department of Records on April 15, 2015. The Roof Deck Amendment gave third-floor unit owners (including Mr. Marrone, Ms. Volla, and Mr. Cooley)[1] the right to build decks above their units on The Lofts' roof. The roof is a common element belonging to all

---

[1] *See* Am. Compl. ¶ 21 (averring that "[Mr.] Cooley['s], [Mr.] Marrone['s], and [Ms.] Volla's units are all on the third story of the Lofts").

2

unit owners. The Roof Deck Amendment classified any constructed roof deck as a limited common element allocated to the unit that built it.

On May 5, 2015, Mr. Marrone executed a Third Amendment to the Declaration (Parking Space Amendment) and recorded it with the Department of Records on May 15, 2015. The Parking Space Amendment lengthened parking spaces P10 through P17 (including those owned by Mr. Marrone and Ms. Volla) by conveying common elements of the garage to them. The Parking Space Amendment also conveyed a four-foot-wide strip of parking space P13 as an egress walkway between parking space P13 (belonging to Mr. Marrone) and parking space P12 (belonging to Mr. Cooley).

The Second and Third Amendments, which were recorded in 2015, stated that they were "previously approved by the unanimous vote of all of the Unit Owners at a meeting of the Unit Owners at which a quorum was present at all times." Reproduced Record (R.R.) at 452a, 458a. The Executive Board informed the Association's members that the votes authorizing these Amendments took place eight years earlier, in January 2007.

At an Executive Board meeting on May 30, 2015, Mr. Marrone and Ms. Volla removed Mr. Cooley from the Executive Board and appointed John Howell, another unit owner and member of the Association, to fill the position. Both Mr. Marrone's and Ms. Volla's terms on the Executive Board ended in September 2017. On September 19, 2017, Mr. Cooley was re-elected to the Executive Board.

## Procedural History

### 1. Complaints and Preliminary Objections

On April 29, 2016, Mr. Cooley initiated this lawsuit by writ of summons, identifying only himself as the plaintiff. On September 30, 2016, he filed a

Complaint, individually and derivatively on behalf of the Association, against Mr. Marrone, Ms. Volla, and the Association (collectively, Defendants) in the Trial Court. In his Complaint, Mr. Cooley asserted claims for intentional violations of the Pennsylvania Uniform Condominium Act, 68 Pa. C.S. §§ 3101-3414 (PUCA), breach of fiduciary duty, defamation, declaratory judgment, and equitable relief.[2] Specifically, Mr. Cooley alleged that:

- Mr. Marrone and Ms. Volla improperly conveyed certain common elements of The Lofts to themselves;

- Mr. Marrone and Ms. Volla caused the Association to file a lawsuit against the developer of a neighboring property without the Association members' prior approval;

- Mr. Marrone and Ms. Volla borrowed $283,372 in the Association's name, without a vote of the Association's members, to make repairs to The Lofts; however, many of the repairs were to limited common elements allocated to Mr. Marrone's and Ms. Volla's units;

---

[2] Derivative actions involving *incorporated* condominium associations are governed by the law relating to shareholder derivative actions. *See* 68 Pa. C.S. § 3108 (stating that "[t]he principles of law and equity, including the law of corporations and unincorporated associations . . . supplement the provisions of this subpart"). Our Court has explained the distinction between an individual suit and a derivative suit in this context as follows:

> *An action is derivative if the gravamen of the complaint is injury to the corporation or its members as a whole.* In effect, the suing shareholder claims to be acting on behalf of the corporation, because the directors and management have failed to exercise their authority for the benefit of the company and all of its shareholders.

*Patterson v. Shelton* (Pa. Cmwlth., No. 2396 C.D. 2011, filed March 6, 2013), slip op. at 8 (internal citation omitted) (emphasis added). When an injury to a corporation results in injury to its shareholders, the injury "is regarded as 'indirect,' and insufficient to give rise to a direct cause of action by the stockholder," requiring that a "derivative action" be filed on behalf of the corporation. *Burdon v. Erskine*, 401 A.2d 369, 370 (Pa. Super. 1979) (*en banc*).

4

- the Association received $180,000 in insurance proceeds for damage to an elevator that was a limited common element allocated to Mr. Marrone's unit and gave the insurance proceeds to Mr. Marrone;

- Mr. Marrone and Ms. Volla illegally removed Mr. Cooley from the Executive Board and engaged in retaliatory conduct; and

- Mr. Marrone and Ms. Volla defamed Mr. Cooley by, *inter alia*:

  - notifying Association members, in a June 2016 document titled "Lofts at 1234 Special Assessment FAQ's" (FAQs), that Mr. Cooley failed to attend Executive Board meetings and that the Association's prior Executive Boards (of which Mr. Cooley was a member) failed to maintain sufficient reserves for repairs to The Lofts;

  - stating in an October 1, 2016 email to Association members that because of Mr. Cooley's lawsuit, the Association will need to levy a special assessment on all unit owners; and

  - characterizing Mr. Cooley as "a nut" in conversations with other unit owners.[3]

After the filing of Defendants' Preliminary Objections, Mr. Cooley filed an Amended Complaint on November 9, 2016. Defendants again filed Preliminary Objections, which the Trial Court sustained in part and overruled in part.

On March 1, 2017, the Trial Court entered an Order: (1) dismissing all individual and derivative claims challenging the validity of the Roof Deck

---

[3] In 2017, Jason Dana, another unit owner in The Lofts, also filed a cause of action against Defendants, captioned *Dana v. Lofts at 1234 Condominium Association*, asserting similar claims. The instant case was consolidated with *Dana* at the Trial Court level. However, on February 22, 2019, this Court denied the parties' Joint Application to Consolidate Appeals.

5

Amendment as barred by the statute of limitations; (2) dismissing all derivative claims challenging the validity of the Parking Space Amendment as barred by the statute of limitations; and (3) dismissing Mr. Cooley's individual claims against Mr. Marrone and Ms. Volla for violations of PUCA for lack of standing. The Trial Court explained its reasoning as follows:

> The [Roof Deck] [A]mendment was recorded on April 15, 2015. Hence, any challenge to the validity of the [Roof Deck] [A]mendment should have been brought on or before April 15, 2016. Here, [Mr.] Cooley[,] in his individual capacity, filed his writ of summons on April 29, 2016, [14] days after the one[-]year anniversary of the [Roof Deck] Amendment's recording. As such, any claims challenging the validity of the [Roof Deck] Amendment are barred by the statute of limitations and the claims are dismissed.
>
> With respect to the [Parking Space] Amendment, the amendment was recorded on May 15, 2015. While the writ of summons was filed on April 29, 2016, the only plaintiff who preserved [the] right to bring the claim challenging the validity of the amendment is [Mr.] Cooley in his individual capacity . . . . However, [Mr.] Cooley[,] individually, does not have standing to assert a challenge to the validity of the [Parking Space] Amendment since the claim is a derivative claim and belongs to the Association. [Mr.] Cooley did not timely assert a derivative claim on behalf of the Association to challenge the [Parking Space] Amendment, however, since the Association was not added as a plaintiff until September 30, 2016, more than three months after the statute of limitations expired. Hence, the claim challenging the validity of the [Parking Space] Amendment is untimely.

Trial Ct. Op., 3/1/17, at 4-5 (footnotes omitted). With regard to Mr. Cooley's individual PUCA claims for breach of fiduciary duty, bad faith, and self-dealing, the Trial Court found that Mr. Cooley lacked standing to assert them because "[t]he [Executive Board members'] fiduciary duty is owed to the Association and not to the unit owner individually." *Id.* at 6.

6

On March 20, 2017, Defendants filed an Answer to the Amended Complaint. On March 21, 2017, Mr. Cooley filed a Second Amended Complaint, without leave of court or consent of the parties. In the Second Amended Complaint, Mr. Cooley asserted additional causes of action for fraud, civil conspiracy, and civil trespass against Mr. Marrone only. All three Defendants filed Preliminary Objections to the Second Amended Complaint. Mr. Marrone also separately filed his own Preliminary Objections.

On July 24, 2017, the Trial Court entered an Order: (1) striking the Second Amended Complaint in its entirety; (2) dismissing Defendants' Preliminary Objections as moot; and (3) sustaining in part and overruling in part Mr. Marrone's Preliminary Objections. In its July 24, 2017 Order, the Trial Court stated:

> [Mr. Cooley] filed the [S]econd [A]mended [C]omplaint without leave of court or agreement of the parties in violation of Pa. R. Civ. P. [No.] 1033. . . . In disregard of this court's [prior] order and without leave of court or opposing counsels' agreement, [Mr. Cooley] filed a [S]econd [A]mended [C]omplaint adding three new causes of action. This filing is improper and is stricken. Pa. R. Civ. P. [No.] 1028 (d), the authority upon which [Mr. Cooley] relies for this improper filing, does not give him leave to file the [S]econd [A]mended [C]omplaint. [Rule] 1028 (d) only allows an objecting party to plead over. In this case, [Mr. Cooley] is not the objecting party and therefore may not plead over. Having once already exercised discretion and applied Pa. R. Civ. P. [No.] 126 to excuse [Mr. Cooley's] disregard for [Rule] 1033, i.e.[,] adding the Association as a party after the filing of the writ of summons and without leave of court and consent of the parties, this court will not exercise its discretion and permit the [S]econd [A]mended [C]omplaint to stand. Moreover, even if this court were to exercise its discretion per [Rule] 126 and excuse [Mr. Cooley's] improper filing, the three causes of action, fraud, conspiracy and trespass, appear to be barred by the gist of the action doctrine.

Trial Ct. Order, 7/24/17, at 2 n.1.

## 2. Appointment of Special Masters and Recusal

On February 13, 2017, the Trial Court appointed the Honorable Samuel M. Lehrer (Retired) as Discovery/Settlement Master and ordered that his fees be shared equally by all parties. On May 1, 2017, the Trial Court appointed Dean R. Phillips, Esquire, as Settlement Master and ordered that his fees be shared equally by all parties.

On August 9, 2017, Mr. Cooley filed an Objection to the Discovery Master's Recommendation to Stay Discovery until the pleadings were closed. On August 31, 2017, Mr. Marrone filed a Response to Mr. Cooley's Objection and a Cross-Motion to Strike and for a Protective Order, asking the Trial Court to strike several paragraphs from Mr. Cooley's Objection as impertinent, scandalous, and unfounded.

On September 6, 2017, the Trial Court overruled Mr. Cooley's Objection to the Discovery Master's Recommendation to Stay Discovery and struck the requested paragraphs from Mr. Cooley's Objection. The Trial Court further directed Mr. Cooley to "refrain from accusations of misconduct, criminal, and quasi[-]criminal conduct in public filings without protection." Trial Ct. Order, 9/6/17, at 2.

On July 13, 2018, Mr. Cooley filed a Motion for Recusal of the Trial Judge, which Mr. Marrone and Ms. Volla opposed. On August 3, 2018, the Trial Court denied the Motion for Recusal, concluding:

> [Mr.] Cooley questions this court's impartiality as a result of its refusal to seal third party [Danuta] Mieloch's [M]otion to [Q]uash [S]ubpoena[4] while striking [Mr. Cooley's] filings which alleged "accusations of misconduct, criminal and quasi-criminal" against a party in various pleadings. Adverse rulings alone do not establish the requisite bias warranting recusal, especially where the rulings are

---

[4] Ms. Mieloch co-owned a condominium unit in The Lofts with Mr. Marrone. On June 18, 2018, Ms. Mieloch filed a motion seeking to quash subpoenas that Mr. Marrone attempted to serve on her with respect to this litigation.

legally proper. While the court did strike paragraphs of [Mr. Cooley's] pleadings containing the allegations of misconduct, a review of the numerous rulings made shows that the allegations were scandalous, impertinent and not necessary to prove [his] claims . . . , while [Ms.] Mieloch's motion failed to show a compelling government interest to warrant sealing the motion. Since[] this court is able to assess this case in an impartial manner, free of personal bias or interest in the outcome, the [M]otion to [R]ecuse is denied.

Trial Ct. Order, 8/3/18, at 1 n.1 (internal citations omitted).

### 3. Summary Judgment

On January 16, 2018, the Trial Court denied Mr. Cooley's Motion for Partial Summary Judgment and granted Defendants' Motion for Partial Summary Judgment, dismissing all remaining derivative claims and Mr. Cooley's individual claim for declaratory relief. The Trial Court concluded that Mr. Cooley lacked standing to bring his derivative claims because the evidence established that the Association was an unincorporated association, not a nonprofit corporation. Trial Ct. Op., 1/16/18, at 9. The Trial Court also rejected Mr. Cooley's alternative request to bring his derivative claims on the Association's behalf as trustee *ad litem*. The Trial Court found that Mr. Cooley "did not have the authority to bring the action as trustee *ad litem* on behalf of the Association" because the record showed that "[t]he Association members overwhelmingly rejected the proposal[] to . . . file or ratify [Mr.] [Dana's] lawsuit against [Mr.] Marrone, [Ms.] Volla[,] and the Association." *Id.* at 10.

On November 14, 2018, the Trial Court granted Mr. Marrone's and Ms. Volla's Motion for Summary Judgment as to Mr. Cooley's defamation claim, the only remaining cause of action. The Trial Court explained:

[Mr.] Cooley is a self-employed legal consultant and photographer since 2008. [Mr.] Cooley alleges that he suffered economic loss based

9

on a special assessment which should have been allocated solely to [Mr.] Marrone and [Ms.] Volla. [Mr.] Cooley has not alleged any income loss as a result of the alleged defamatory statements. [Mr.] Cooley alleges that the statements served to lower [Mr.] Cooley's esteem and reputation among the Association members and vendors who work with/for the Association. [Mr.] Cooley further contends that the statements have caused others not [to] associate with him and to discount his authority as a[n Executive] Board member as well as his arguments in relation to the [Executive] Board and Association activities.

Trial Ct. Op., 11/14/18, at 7. The Trial Court concluded that Mr. Cooley failed to state a defamation claim because he produced no evidence of actual harm. *Id.* at 8. The Trial Court observed that "the evidence presented by [Mr.] Cooley shows that his reputation within the . . . Association community was not harmed since he currently holds a position on the Executive Board." *Id.*

The Trial Court pointed out that unit owners Clifford and Verurschka Stevens testified that when the situation first arose regarding the special assessment, they believed Mr. Cooley was "nuts" and "annoying." *Id.* at 5. Mr. Stevens also testified that Mr. Marrone had characterized Mr. Cooley as "someone who was after him and a nut." *Id.* However, the Trial Court found that regardless of their characterizations of Mr. Cooley, Mr. and Mrs. Stevens credibly testified that they "did not believe that those characterizations inhibited [Mr. Cooley's] performance as a[n Executive B]oard member." *Id.* at 9. Specifically, Mr. "Stevens testified that Mr. Cooley is 'someone that [he] trust[s] in terms of his ability to stick to facts and research' and that [Mr.] Cooley is a 'good guy, trying to do the best thing that he can'" and "Mrs. Stevens testified that Cooley is 'someone trustworthy . . . [a] decent, honest, good human being.'" *Id.* (citations omitted).

10

Finally, the Trial Court concluded that despite "the lack of actual harm to [Mr.] Cooley, the statements attributed to [Mr.] Marrone and [Ms.] Volla are not capable of defamatory meaning." *Id.* at 10. In particular:

> [T]he statements identified by [Mr.] Cooley in the May 30, 2015 Meeting Minutes, the . . . FAQs, the September 27, 2016 email, the October 1, 2016 email and the July 31, 2015 email are statements of opinion based on disclosed facts set forth within the context of the emails and FAQs referenced above. A mere statement of opinion based on disclosed facts is not enough to establish a defamation action. The principle that a statement of opinion cannot support a claim for defamation has been firmly established in Pennsylvania. At best, the statements may be annoying or embarrassing but they are not actionable as defamatory.

*Id.* at 10-11 (footnotes omitted).

On December 12, 2018, Mr. Cooley timely appealed to this Court.[5] On January 25, 2019, the Trial Court issued a Pa. R.A.P. 1925(a) Opinion, expressly

---

[5] In his Notice of Appeal, Mr. Cooley states that he is appealing from the following Trial Court Orders:

- the November 14, 2018 Order entering summary judgment in favor of Mr. Marrone and Ms. Volla on the remaining defamation claim;
- the February 13, 2017 Order appointing a Discovery/Settlement Master;
- the March 1, 2017 Order partially sustaining Defendants' Preliminary Objections;
- the March 13, 2017 Order granting a protective order and quashing subpoenas;
- the May 1, 2017 Order appointing a Settlement Master;
- the July 24, 2017 Order striking the Second Amended Complaint and sustaining in part Mr. Marrone's Preliminary Objections;
- the September 6, 2017 Order prohibiting "improper accusations";
- the January 16, 2018 Order granting summary judgment for Defendants and denying Mr. Cooley's summary judgment motion;
- the January 24, 2018 Order striking Mr. Cooley's response to Kyle M. Heisner, Esquire's Motion to Withdraw as Counsel for the Association; and
- the August 3, 2018 Order denying Mr. Cooley's Motion for Recusal.

11

incorporating the reasoning outlined in its prior Orders in this matter. The Trial Court also determined that Mr. Cooley waived his right to challenge the Orders appointing special masters because he did not object at the time of the appointments, depriving the Trial Court of the opportunity to resolve the objections.

## Issues

1. Did the Trial Court err in concluding that Mr. Cooley lacked standing to bring individual claims against the Association's Executive Board members for their alleged violations of PUCA?

2. Did the Trial Court err in granting summary judgment without additional discovery because the Association's status as an unincorporated association was established by the record before the Trial Court?

3. Did Mr. Cooley lack authority to bring derivative claims on behalf of the Association as trustee *ad litem*, where the Association did not consent to a derivative lawsuit?

4. Did the Trial Court err in concluding that the one-year statute of limitations in the Declaration precluded Mr. Cooley's challenges to the Roof Deck and Parking Space Amendments?

5. Did the Trial Court err in granting summary judgment in favor of Mr. Marrone and Ms. Volla on Mr. Cooley's defamation claim?

6. Did the Trial Court abuse its discretion in ordering Mr. Cooley to refrain from improper accusations of misconduct and criminal and quasi-criminal conduct in public filings and in striking certain portions of his court filings?

---

*See K.H. v. J.R.*, 826 A.2d 863, 871 (Pa. 2003) (holding that "a notice of appeal filed from the entry of judgment will be viewed as drawing into question any prior non-final orders that produced the judgment").

7. Did the Trial Court err in striking Mr. Cooley's Second Amended Complaint, which he filed without leave of court or agreement of the parties?

8. Did the Trial Court err or abuse its discretion in appointing Special Masters?

9. Did the Trial Court abuse its discretion in denying Mr. Cooley's Motion for Recusal?

## Applicable Standards of Review

### 1. Preliminary Objections

This Court's review of an order sustaining preliminary objections is limited to determining whether the trial court abused its discretion or committed an error of law. *Factor v. Goode*, 612 A.2d 591, 592-93 (Pa. Cmwlth. 1992). In ruling on preliminary objections in the nature of a demurrer, the trial court must accept as true all well-pled facts and inferences that may be reasonably deduced therefrom. *Id.* at 593. The trial court should sustain a demurrer only in cases that are clear and free from doubt. *Id.*

### 2. Summary Judgment

This Court's review of an order granting summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Pickering v. Sacavage*, 642 A.2d 555, 558 (Pa. Cmwlth. 1994). The trial court should grant summary judgment only in a clear case, and the moving party has the burden of demonstrating that no material issues of fact exist. *Id.* The trial court must view record in the light most favorable to the non-moving party. *Id.*

### 3. Motion for Recusal

"Before it can be said that a judge should have recused himself, the record must clearly show prejudice, bias, capricious disbelief or prejudgment." *Dunn v.*

13

*Bd. of Prop. Assessment, Appeals & Review*, 877 A.2d 504, 517 (Pa. Cmwlth. 2005), *aff'd*, 936 A.2d 487 (Pa. 2007). "[A] party seeking recusal or disqualification of a trial judge must raise the objection at the earliest possible moment or the claim will be regarded as time barred." *Id.* The decision regarding recusal is within the discretion of the judge whose recusal is requested. *Id.* This Court reviews a trial judge's ruling on a motion to recuse for an abuse of discretion. *Id.*

## Analysis

### 1. Individual PUCA Claims

Mr. Cooley argues that the Trial Court erred in dismissing his individual claims against Mr. Marrone and Ms. Volla for intentional violations of PUCA because he lacked standing to sue the individual Executive Board members for harm suffered by the Association. Section 3412 of PUCA states that if any person "violates any provision of this subpart or any provision of the declaration or bylaws, *any person* or class of persons adversely affected by the violation has a claim for appropriate relief." 68 Pa. C.S. § 3412 (emphasis added). In his Amended Complaint, Mr. Cooley averred that Mr. Marrone and Ms. Volla knowingly violated PUCA by acting in bad faith and in breach of their fiduciary duties to the Association. Am. Compl. ¶¶ 324, 328, 330-31.

The Trial Court dismissed these claims, finding that Mr. Cooley lacked standing to assert them because, under PUCA, "[t]he [Executive Board members'] fiduciary duty is owed to the Association and not to the unit owner individually." Trial Ct. Op., 3/1/17, at 6; *see* 68 Pa. C.S. § 3303(a) ("In the performance of their duties, the officers and members of the executive board shall stand in a fiduciary relation *to the association . . . .*") (emphasis added); R.R. at 352a (Section 14.1(a) of the Declaration states that "the officers and members of the Executive Board shall

14

stand in a fiduciary relation *to the Association* and shall perform their duties . . . in good faith, . . . [and] in the best interests *of the Association*") (emphasis added). Section 3311 of PUCA permits an individual unit owner to bring a tort or contract cause of action *against a condominium association* for damages caused by "a wrong done by the association or by an agent or employee of the association." 68 Pa. C.S. § 3311(a)(2)(i), (a)(4). This section, however, does not authorize an individual unit owner to file claims *against the board members* of an association.[6]

Mr. Cooley cites several cases that he believes stand for the proposition that PUCA provides individual unit owners with standing, even when the alleged harm is suffered by the condominium association. *See* Mr. Cooley's Br. at 29 (citing *Lyman v. Boonin*, 635 A.2d 1029 (Pa. 1993); *Falini v. Brinton Square Condo. Ass'n* (Pa. Cmwlth., No. 676 C.D. 2015, filed Feb. 1, 2016); and *McLafferty v. Council for Ass'n of Owners of Condo. No. One, Inc.*, 148 A.3d 802 (Pa. Super. 2016)). However, these cases do not support Mr. Cooley's contention that he has individual

---

[6] Section 14.3 of the Declaration of The Lofts provides that Executive Board members may be subject to personal liability in limited circumstances, as follows:

> No Executive Board member or officer, in his capacity as such, shall be personally liable for monetary damages for any action taken, to any failure to take any action, *unless he has breached or failed to perform the duties of his office under the standards described above.*

R.R. at 353a (emphasis added). However, it appears that in such circumstances, any liability for monetary damages would be to the Association, to which the Board members' duties are owed. *See id.* at 352a (stating that "the officers and members of the Executive Board shall stand in a fiduciary relation to the Association and shall perform their duties . . . in good faith, . . . [and] in the best interests of the Association"). Nothing in the Declaration expressly permits a Board member to be held personally liable in tort to *an individual unit owner or member* of the Association, nor does Mr. Cooley make such a claim here.

15

standing to sue Mr. Marrone and Ms. Volla for violations of PUCA, as they are all distinguishable from this case.

In *Lyman*, the unit owners filed an action against a condominium association and its board members that pre-dated, and was not governed by, PUCA, and the issue of the unit owners' standing to sue the board members was not raised.[7] *Falini* was an action by a unit owner against a condominium association and its executive board for property damage to her individual unit. However, unlike the Declaration in this case, the condominium declaration in *Falini* expressly permitted individual tort actions against the executive board members, stating that "board members can be held *personally liable 'in tort to a [u]nit [o]wner . . .* for the . . . [b]oard members' own willful misconduct or gross negligence in the performance of their duties.'" *Falini*, slip op. at 6 (quoting declaration) (emphasis added). Finally, in *McLafferty*, the issue of the unit owners' standing to sue executive board members under PUCA was not raised. Therefore, we are unpersuaded by Mr. Cooley's argument that these cases establish that he has standing to sue the Executive Board members for violations of PUCA.

Furthermore, in support of his PUCA cause of action, Mr. Cooley did not allege damages unique to him that were not derivative of those sustained by the Association as a whole. It is well settled that

> under established Pennsylvania law, a shareholder does not have standing to institute a direct suit for "a harm [that is] peculiar to the corporation and [that is] only . . . *indirectly injurious* to [the] shareholder." *Reifsnyder v. Pgh. Outdoor Adver. Co.*, 405 Pa. 142, 173 A.2d 319, 321 (1961). Rather, such a claim belongs to, and is an asset of, the corporation.

---

[7] *See Twp. of Bristol v. 1 Enters., LLC*, 177 A.3d 1045, 1051 (Pa. Cmwlth. 2018) (stating that "[l]ack of standing is not a jurisdictional defect" and the issue of standing "must be raised at the earliest opportunity and [is] waived if not promptly raised").

16

> *To have standing to sue individually, the shareholder must allege a direct, personal injury—that is independent of any injury to the corporation—*and the shareholder must be entitled to receive the benefit of any recovery.

*Hill v. Ofalt*, 85 A.3d 540, 548 (Pa. Super. 2014) (emphasis added).

In Count I of the Amended Complaint (intentional violations of PUCA), Mr. Cooley averred that he "individually and as an Association member and [an Executive] Board member, has been damaged" by Mr. Marrone's and Ms. Volla's actions, without specifying *how* he was individually harmed by their conduct. Am. Compl. ¶ 342. Moreover, throughout Count I, Mr. Cooley repeatedly alleges that Mr. Marrone and Ms. Volla acted in bad faith and breached their fiduciary duties owed "to the Association," *id.* ¶¶ 336, 341, 343-44, and improperly misused and misappropriated "Association money" and "property of the Association," *id.* ¶¶ 342-43, 347, damages that would have been sustained by all members of the Association. *See Kehr Packages, Inc. v. Fidelity Bank, Nat'l Ass'n*, 710 A.2d 1169, 1176 (Pa. Super. 1998) ("[W]here the gravamen of a claim is injury to a corporation, the shareholders of the corporation may not claim injury to themselves rather than the corporation."); *see also Hill*, 85 A.3d at 550 (dismissing a shareholder's individual claims against an executive board member, where the shareholder "never alleged that [the board member] breached a contractual or fiduciary duty *owed to [the shareholder] individually*") (emphasis added).

Therefore, we conclude that the Trial Court properly dismissed Mr. Cooley's individual PUCA claims against Mr. Marrone and Ms. Volla for lack of standing.

## 2. Derivative Claims on Behalf of the Association

Mr. Cooley next asserts that the Trial Court erred in dismissing his derivative claims brought on behalf of the Association for violations of PUCA, breach of fiduciary duty, declaratory judgment, and equitable relief. As Mr. Cooley

17

acknowledges in his appellate brief, *see* Mr. Cooley's Br. at 25, 30, 33, he may bring derivative claims on behalf of the Association in one of two ways: (1) if the Association is determined to be a nonprofit corporation, he seeks to bring derivative claims pursuant to Section 5781 of the Nonprofit Corporation Law of 1988 (Nonprofit Law), 15 Pa. C.S. § 5781; or (2) if the Association is determined to be an unincorporated association, he seeks to bring derivative claims as trustee *ad litem* for the Association under Pa. R.C.P. No. 2152. We will address each argument in turn.

### a. Derivative Claims Under the Nonprofit Law

First, Mr. Cooley asserts that the Association is a nonprofit corporation and, as such, his derivative claims were brought on the Association's behalf under Section 5781 of the Nonprofit Law, which provides in relevant part:

> [A] plaintiff may maintain a derivative action to enforce a right of a nonprofit corporation only if[] . . . the plaintiff first makes a demand on the corporation or the board of directors, requesting that it cause the corporation to bring an action to enforce the right, and[] . . . the corporation does not bring the action within a reasonable time.

15 Pa. C.S. § 5781(a)(1)(i). Further, each plaintiff seeking to bring a derivative claim "must aver and it must be made to appear that each plaintiff was a member of the corporation at the time of the transaction of which he complains." *Id.* § 5782(a).

Mr. Cooley argues that although the Association was originally organized as an unincorporated association in 2005, Articles of Incorporation were subsequently filed in 2012. Mr. Cooley contends that the filing of Articles of Incorporation

18

conclusively establishes that the Association was operating as a nonprofit corporation governed by the Nonprofit Law.[8] We disagree.

The Trial Court ruled on this issue in its January 16, 2018 Opinion. The Trial Court concluded that Mr. Cooley lacked standing to bring his derivative claims because the evidence established that the Association was an unincorporated association, not a nonprofit corporation.[9] This conclusion was based on the Trial Court's review of the Association's By-Laws, the Articles of Incorporation for the nonprofit entity named "Lofts at 1234 Condominium Association," meeting minutes reflecting that Declarant ceded control of The Lofts to the Association, and applicable law. In particular, the Trial Court cited Section 5331 of the Nonprofit Law, which states:

> In the case of the incorporation as a nonprofit corporation under this subpart of an unincorporated association, *the articles of incorporation shall contain*, in addition to the provisions required in Subchapter A (relating to incorporation generally), *a statement that the incorporators constitute a majority of the members of the committee authorized to incorporate the association by the requisite vote required by the organic law of the association for the amendment of the organic law*.

15 Pa. C.S. § 5331 (emphasis added).

At the time the Articles of Incorporation were filed in 2012, Declarant had ceded control of The Lofts to the Association, so a vote by the unit owners to

---

[8] Articles of Dissolution were filed on behalf on the nonprofit entity named "Lofts at 1234 Condominium Association" on August 4, 2017 while this matter was pending in the Trial Court. *See* R.R. at 3997a-99a.

[9] While the Federal Rules of Civil Procedure specifically allow derivative actions by members of unincorporated associations, *see* Fed. R. Civ. P. 23.1(a), the Pennsylvania Rules of Civil Procedure do not. As discussed above, Mr. Cooley concedes that if the Association is unincorporated, he may only bring derivative claims on its behalf as trustee *ad litem* under Pa. R.C.P. No. 2152.

19

incorporate the Association was required under Section 5331 of the Nonprofit Law. However, "[t]he Articles of Incorporation show a strike[-]through in the section requesting if a vote occurred." Trial Ct. Op., 1/16/18, at 9 n.8; *see* R.R. at 449a. This evidence establishes that, at the time the Articles were filed, the Association's members did not vote to convert the Association's legal status to a nonprofit corporation.

Furthermore, the Trial Court found no other record evidence that the Association ever voted to convert its legal status to a nonprofit corporation. The Trial Court therefore concluded that the Association is still operating as an unincorporated association and that, "[a]t best, the [A]rticles of [I]ncorporation created a separate entity with the same name of the Association with the intent to convert the unincorporated association to a nonprofit corporation in the future." Trial Ct. Op., 1/16/18, at 9.

Contrary to Mr. Cooley's assertion, the Trial Court was not required to accept the filing of Articles of Incorporation alone as conclusive evidence that the Association is incorporated, particularly where the Articles of Incorporation themselves "show a strike[-]through in the section requesting if a[n Association] vote occurred" to officially convert the Association's legal status. *Id.* at 9 n.8; *see* R.R. at 449a. The Association's By-Laws, which are attached to Mr. Cooley's Amended Complaint, also expressly state that the Association is organized "as an unincorporated association." R.R. at 469a. We conclude that the Trial Court correctly determined, based on the evidence of record, that the Association is unincorporated and, as such, Mr. Cooley lacked standing to file a derivative suit on its behalf under the Nonprofit Law.

20

Next, Mr. Cooley argues that the Trial Court erred in dismissing his derivative claims before the close of discovery, as summary judgment may be granted only "after the completion of discovery relevant to the motion." Pa. R.C.P. No. 1035.2(2). Mr. Cooley claims that the Trial Court precluded him from conducting full discovery and presenting additional evidence demonstrating the Association's status as a nonprofit corporation. We disagree.

Rule 1035.2(2) did not require the Trial Court to wait until the completion of *all* discovery to grant summary judgment on the issue of the Association's legal status – that is, whether the Association is an unincorporated association or a nonprofit corporation. As explained above, the Trial Court had more than sufficient evidence before it to rule on summary judgment. Most notably on this point, the Trial Court issued a rule to show cause and held an evidentiary hearing to allow Mr. Cooley and Mr. Dana to establish why they believed the Association is a nonprofit corporation. At the outset of the hearing, Mr. Cooley's counsel protested the petition being heard as procedurally improper, *see* Notes of Testimony (N.T.), 12/14/17, at 6-8, but then went on to present argument on the merits. No testimony was taken, and the attorneys for both sides presented argument to the Trial Court regarding the Association's legal status and whether Mr. Cooley was permitted to bring derivative claims on the Association's behalf. In any event, Mr. Cooley has failed to identify what additional evidence could have been adduced to establish a change in the Association's legal status, given the extensive evidence already of record at the time of the Trial Court's ruling. *See, e.g.,* N.T., 9/5/17, at 58 (Mr. Marrone's counsel stated on the record that "about 20,000 pages of documents between both sides have been exchanged" during discovery at that point).

21

Accordingly, we conclude the Trial Court correctly determined that Mr. Cooley lacked standing to bring derivative claims on the Association's behalf under the Nonprofit Law.

### b. Derivative Claims as Trustee *Ad Litem*

In the alternative, Mr. Cooley argues that if the Association is determined to be unincorporated, as Defendants contend, he was permitted to file his derivative claims as trustee *ad litem* of the Association under Pennsylvania Rule of Civil Procedure No. 2152, which provides:

> An action prosecuted by an association shall be prosecuted in the name of a member or members thereof as trustees ad litem for such association. *An action so prosecuted shall be entitled "X Association by A and B, Trustees ad Litem" against the party defendant*.

Pa. R.C.P. No. 2152 (emphasis added). However, Mr. Cooley's Amended Complaint does not conform to the requirements of Rule 2152, as it does not identify Mr. Cooley as a trustee *ad litem* of the Association in the caption or elsewhere in the Complaint.[10] In his appellate brief, Mr. Cooley asserts that he was entitled to bring his derivative claims as trustee *ad litem* of the Association because he is a member of the Association. We disagree.

In its January 16, 2018 Opinion, the Trial Court determined that "[w]hile it is sufficient for [Mr.] Cooley to allege in the complaints filed that he is bringing an action on behalf of the Association as trustee *ad litem* to overcome preliminary objections, at th[e] [summary judgment stage] of the litigation, relying solely upon the pleadings is not enough." Trial Ct. Op., 1/16/18, at 10; *see Nicastro v. Cuyler*,

---

[10] The only reference to *ad litem* status in the Amended Complaint is the following averment: "Alternatively, to the extent that the Association is found to be an unincorporated association, [Mr.] Cooley brings this action individually and as trustee ad litem of the . . . Association." Am. Compl. ¶ 11.

22

467 A.2d 1218, 1220 (Pa. Cmwlth. 1983) (stating that when a motion for summary judgment is filed, the responding party "may not rely solely on allegations [in] his pleadings, but must submit supplemental materials which establish a genuine issue of material fact"); *see also Highway Truck Drivers & Helpers, Local 107 v. Cohen*, 172 A.2d 824, 827 (Pa. 1961) (holding that members of an unincorporated association, who filed a complaint as trustees *ad litem* of the association, need not allege in the body of their complaint the authority conferred upon them by the association to bring an action as trustees *ad litem*; rather, the question of the members' authority to act as trustees *ad litem* is an issue to be resolved by the trier of fact).

The Trial Court properly found, based on the evidence adduced during discovery, that Mr. Cooley "did not have the authority to bring the action as trustee *ad litem* on behalf of the Association" because the record showed that "[t]he Association members overwhelmingly rejected the proposal[] to . . . file or ratify [Mr.] Cooley's lawsuit against [Mr.] Marrone, [Ms.] Volla[,] and the Association." Trial Ct. Op., 1/16/18, at 10. The Trial Court explained:

> [A] special meeting was held on November 17, 2016 and the unit owners were provided with two ballots. . . . The second ballot posed two questions: a) should the Executive Board of the Association conduct an immediate, independent investigation of the allegations against [Mr.] Marrone and [Ms.] Volla . . . ? and b) should the [Executive] Board commence suit against [Mr.] Marrone and [Ms.] Volla on behalf of the Association for self-dealing conduct, breaches of fiduciary duty, and violations of [PUCA]? After a vote, the ballot questions were rejected by the unit [owners].

*Id.* at 7.

Mr. Cooley also contends that the Nonprofit Law permits an individual to file a derivative suit where the nonprofit corporation rejects a demand to sue. *See* 15 Pa.

23

C.S. § 5781(a)(1)(i) (a derivative suit is properly maintained if a demand is made and "the corporation does not bring the action within a reasonable time"). However, as discussed in Section 2 of this Analysis, *supra*, we conclude that the Association is not a corporation governed by the Nonprofit Law, but an *unincorporated association*. In any event, the Articles of Incorporation explicitly state that the nonprofit entity "shall have no members." R.R. at 449a; *see* 15 Pa. C.S. § 5306(a)(7) (stating that the articles of incorporation for the nonprofit corporation shall include a statement indicating "[i]f the corporation is to have no members"); *id.* § 5751(b) (setting forth procedures applicable to "[c]orporations without voting members"). Thus, even if the Association's legal status had been converted to a nonprofit corporation by the filing of the Articles of Incorporation, Mr. Cooley's derivative claims would still fail because, by the plain language of the Articles, he is not a "member" of that corporation. *See* 15 Pa. C.S. § 5782(a) (requiring that a plaintiff in a derivative suit be "a member of the corporation at the time of the transaction of which he complains").

Accordingly, we conclude that the Trial Court properly dismissed all of Mr. Cooley's derivative claims brought on the Association's behalf.

### 3. Challenges to the Roof Deck and Parking Space Amendments

Mr. Cooley asserts that the Trial Court erred in dismissing all claims challenging the validity of the Roof Deck and Parking Space Amendments to the Declaration as time-barred. The Trial Court concluded that such claims were barred by the one-year statute of limitations in Section 7.2 of the Declaration, which states that "[n]o action to challenge the validity of an amendment adopted by the Association pursuant to this [s]ection may be brought more than one year after the amendment is recorded." R.R. at 341a. Section 3219(b) of PUCA likewise states:

"No action to challenge the validity of an amendment adopted by the association pursuant to this section may be brought more than one year after the amendment is recorded." 68 Pa. C.S. § 3219(b).

Mr. Cooley argues, however, that for the statute of limitations to apply, the Association must have *properly adopted* the Amendments, as Section 3219(b) of PUCA requires that the Amendments be "adopted by the association pursuant to this section." *Id.* Section 3219(a)(1) of PUCA provides:

> The declaration, including the plats and plans, may be amended *only by vote or agreement of unit owners of units to which at least*:
>
> (i) *sixty-seven percent of the votes in the association are allocated*;
>
> (ii) any larger majority the declaration specifies; or
>
> (iii) a smaller number as specified in the declaration if all of the units are restricted exclusively to nonresidential use.

68 Pa. C.S. § 3219(a)(1) (emphasis added).

Mr. Cooley asserts that there was no Association in existence at the time of the adoption of the Roof Deck and Parking Space Amendments, despite the statements contained in both Amendments that they were "approved by the unanimous vote of all of the [u]nit [o]wners at a meeting of the [u]nit [o]wners at which a quorum was present at all times." R.R. at 452a, 458a. The votes authorizing the Amendments allegedly occurred at a January 18, 2007 meeting attended only by Mr. Addimando and Sean Snyder, one of the original unit owners in The Lofts. In his Amended Complaint, Mr. Cooley averred that "the [Roof Deck] and [Parking Space] Amendment[s] were adopted without authorization and for self-serving purposes" and that Mr. Marrone and Ms. Volla "engaged in dishonest acts, gross abuse of authority, breach of their fiduciary dut[ies], and self-dealing." Am. Compl.

25

¶¶ 386, 390.  Mr. Cooley contends that because the Roof Deck and Parking Space Amendments were not adopted in accordance with PUCA's requirements and were fraudulently recorded, they are effectively void *ab initio*, and, thus, his claims are not subject to the one-year limitations period.[11]

In response, Defendants assert that as of January 18, 2007, Declarant was still 1234 Hamilton, L.P., and the Association was governed by Mr. Addimando, Declarant's representative.  They contend that at that time, Mr. Addimando had the right to make decisions concerning the sale, classification, and usage of certain portions of The Lofts, including common areas, that were not addressed in the original Declaration.  According to Defendants, the 2007 votes were not memorialized until 2015 because there were no Executive Board meetings until Mr. Marrone joined the Executive Board in 2015; shortly thereafter, the Executive Board adopted the Roof Deck and Parking Space Amendments to conform with Declarant's prior decisions.

Regardless of how the Roof Deck and Parking Space Amendments came to exist, it is evident that Mr. Cooley is challenging the *validity* of those Amendments.  Mr. Cooley cites no binding authority to support his claim that PUCA's statute of limitations can be circumvented by alleging that an amendment was the product of fraud or otherwise procedurally invalid.  Neither the Declaration nor PUCA limits the one-year statute of limitations to certain types of actions, nor do they make an exception for claims alleging fraud.  Rather, the statute of limitations language

_____

[11] While Mr. Cooley claims in his appellate brief that the Roof Deck and Parking Space Amendments were fraudulently recorded, *see* Mr. Cooley's Br. at 40-44, he did not make such an allegation in his Amended Complaint, nor did he assert fraud as a cause of action in the Amended Complaint.  Mr. Cooley did not assert fraud until the filing of his Second Amended Complaint, which was stricken by the Trial Court.

26

unambiguously states that "*[n]o action to challenge the validity of an amendment*" may be filed beyond the one-year period. 68 Pa. C.S. § 3219(b) (emphasis added); R.R. at 341a.[12]

We recognize that this Court has permitted the late filing of an action challenging the validity of an amendment to a declaration under PUCA's sister legislation, the Uniform Planned Community Act (UPCA), 68 Pa. C.S. §§ 5101-5414.[13] In *Belleville v. David Cutler Group*, 118 A.3d 1184, 1194 (Pa. Cmwlth. 2015), we held that Section 5219(b) of the UPCA, setting forth a one-year statute of limitations for actions challenging validity of an amendment adopted by a homeowners' association, did not apply to the homeowners' declaratory judgment action asserting that purported amendments to the declaration were invalidly adopted. The homeowners challenged the first amendment to the declaration five years after its recording, when the association used the amendment to justify imposing a higher assessment on the homeowners. *Id.* at 1190-91. Until that time, the homeowners had no knowledge of the amendment or its recording. *Id.* The homeowners sought a declaration that the amendment was "null and void" because it was "recorded without notice to any [home]owner within the [d]evelopment and without consent" as required by the UPCA. *Id.* at 1191.

---

[12] Mr. Cooley also contends that the conveyances contained in the Roof Deck and Parking Space Amendments are void under Section 3318(b) of PUCA, which states that "[a]ny purported conveyance . . . of *common elements*, unless made pursuant to this section, is *void*." 68 Pa. C.S. § 3318(b) (emphasis added). This assertion, however, still does not overcome the statute of limitations issue. Whether Mr. Cooley claims that the Amendments are void because they were invalidly adopted, or whether he claims that the conveyances within the Amendments are void, he is still fundamentally challenging the *validity* of the Amendments. Hence, these claims are subject to the one-year statute of limitations.

[13] The UPCA governs homeowners' associations in townhome and other planned communities, while PUCA governs only condominium associations. PUCA was enacted after the UPCA but was modeled after the UPCA.

27

Notably, the statute of limitations provisions in the UPCA and PUCA are virtually identical. *Compare* 68 Pa. C.S. § 5219(b) *with* 68 Pa. C.S. § 3219(b). In holding that the homeowners' action was not time-barred under the UPCA, we stated:

> Under the [a]ssociation's interpretation of Section 5219 of the UPCA, the executive board of the [a]ssociation could unilaterally make any amendment it chooses—regardless of how large or material a change—without notice to or vote by the [a]ssociation members, so long as the board declares the amendment to be a technical correction under Section 5219(f) of the UPCA. Furthermore, under the [a]ssociation's interpretation, pursuant to Section 5219(b) of the UPCA, *[a]ssociation members would have no form of recourse unless they somehow discover, without the benefit of any notice or vote, that an amendment has been recorded and bring an action within one year of the recording of that amendment. This is the exact type of absurd result the General Assembly is presumed not to intend.* Furthermore, it would frustrate the purpose of Section 5219(a) [of the UPCA], which is to ensure that a majority of association members are aware of and agree to material changes in the documents which govern the rights, responsibilities, obligations, and powers of the association, its members, and its Board.

*Belleville*, 118 A.3d at 1194 (emphasis added).

*Belleville*, however, is factually distinguishable from this case. Unlike the homeowners in *Belleville*, Mr. Cooley knew of the Roof Deck and Parking Space Amendments at the time of their recording. In his Amended Complaint, Mr. Cooley averred that "on April 29, 2015, [Mr.] Marrone emailed all [unit] owners in the Association a newly executed and recorded [Roof Deck] Amendment." Am. Compl. ¶ 120. He also averred that on May 15, 2015, Ms. Volla "sent an email, apparently to all members of the Association," providing them with a copy of the newly recorded [Parking Space] Amendment. *Id.* ¶ 156; *see also* R.R. at 3634a-3640a, 3772a-3776a, 4096a.

28

Critically, in an email to Mr. Dana on March 24, 2016, Mr. Cooley stated: "I'm meeting with a highly rated real estate attorney . . . [on] Monday afternoon. *I have to move fairly quickly because the one[-]year anniversary of the [Parking Space A]mendment to the [D]eclaration is coming up (May 15) after which it cannot be challenged.*" R.R. at 3767a (emphasis added). Not only did Mr. Cooley clearly know of the one-year limitations period, but the record also shows that Mr. Cooley and Mr. Dana discussed the filing of their lawsuits and actively sought legal advice during that timeframe. *See* R.R. at 3697a-3701a.[14] This is not a situation where the

_____

[14] On April 21, 2016, in a lengthy email exchange, Mr. Dana and Mr. Cooley specifically discussed the Parking Space Amendment, with Mr. Cooley referring to it as "the illegal [T]hird [A]mendment." R.R. at 3700a. Mr. Cooley also discussed with Mr. Dana "the [January 2007] fake meeting between Leo [Addimando] and Sean [Snyder]," stating, "I don't think you'll ever prove that meeting didn't happen." *Id.* at 3701a. On April 23, 2016, Mr. Dana wrote to Mr. Cooley:

> I for one don't blame you for suing the [A]ssociation. In fact, I encourage it if the attorney thinks it's the appropriate target. Tom [Marrone] should be deposed, but half of the owners are lazy and stupid. When he gets spanked in court and the board's reckless behavior costs us all more[] money, maybe people will listen and act. And it will be a first, and legally validated, step toward what I think is a case for breach of fiduciary responsibility if we want to pursue [it].

*Id.* at 3698a. Later that day, Mr. Dana wrote to Mr. Cooley, "Maybe Tom [Marrone] really is the best person to sue for the [parking] space, since it was 100[%] self[-]dealing." *Id.* at 3697a. Mr. Cooley replied:

> On the parking spot issue alone, we could have a breach of duty count against Marrone himself – self[-]dealing. Marrone did the repainting [of parking spaces] all on his own. It was never really a board action. . . . Marrone said he didn't need a board vote because he was simply following through on the intentions of the developer. A judge would laugh at that pile of bullshit. . . .
>
> While Echo [Volla] would have voted with Marrone, she was in France at the time and there was no proxy vote in her place on the board. She was still in France when

29

unit owner did not discover that an amendment was recorded until after the statute of limitations expired, leaving him or her with no other recourse. As such, the policy considerations that led the *Belleville* Court to permit the homeowners' untimely challenge to the procedural validity of an amendment are simply not present in this case.

Here, the Roof Deck Amendment was recorded on April 15, 2015 and the Parking Space Amendment was recorded on May 15, 2015. Am. Compl. ¶¶ 117, 167; *see* R.R. at 451a, 458a. With regard to the Roof Deck Amendment, Mr. Cooley did not file his writ of summons until April 29, 2016, more than one year after the Amendment was recorded. With regard to the Parking Space Amendment, Mr. Cooley did not add the Association as a plaintiff or assert his derivative claims until September 30, 2016, more than one year after the Amendment was recorded.[15] As noted earlier, the one-year statute of limitations for challenges to the validity of an amendment is not limited to certain types of actions. Once unit owners become aware of what they believe are invalid amendments to a declaration, they cannot sit idle and allow a potential cause of action to linger indefinitely. Therefore, we agree with the Trial Court that all of Mr. Cooley's claims challenging the validity of the Roof Deck and Parking Space Amendments are barred by the one-year statute of limitations.

---

she sent the email to all of us two weeks later containing the [Parking Space A]mendment. . . .

*Id.*

[15] In his briefs filed with this Court, Mr. Cooley does not dispute (or even address) the Trial Court's determination that he filed his causes of action more than one year after the recording of the Roof Deck and Parking Space Amendments. He merely contends that the Amendments were fraudulently recorded and, thus, the one-year limitations period is inapplicable.

## 4. Defamation Claim

Mr. Cooley asserts that the Trial Court erred in granting summary judgment in favor of Mr. Marrone and Ms. Volla on his defamation claim. Mr. Cooley contends that the Trial Court erroneously concluded that the statements at issue were not capable of defamatory meaning and that Mr. Cooley did not suffer actual harm. We disagree.

In a defamation action, the "plaintiff bears the burden of proving: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion." *Balletta v. Spadoni*, 47 A.3d 183, 196 (Pa. Cmwlth. 2012); 42 Pa. C.S. § 8343(a). A statement is "defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Balletta*, 47 A.3d at 196.

Mr. Cooley argues that statements that falsely accuse an Executive Board member of neglecting his duties and taking illegal actions that will cost the Association thousands of dollars are capable of a defamatory meaning. Mr. Cooley contends that such statements were intended to lower his esteem within his community, cause others to not associate with him, and harm his reputation as an Executive Board member of the Association.

We agree with the Trial Court that the statements at issue were not defamatory because they were statements of opinion based on disclosed facts. *See Feldman v. Lafayette Green Condo. Ass'n*, 806 A.2d 497, 501 (Pa. Cmwlth. 2002) ("It is clear

31

that expressions of pure opinion that rely on disclosed facts are not actionable."). In particular, the FAQs sent to the Association members offered an opinion that an additional assessment was necessary because the prior Executive Boards had not maintained sufficient reserves to pay for necessary repairs to the Lofts. The FAQs provided detailed facts to Association members explaining why a special assessment was required. The FAQs also stated that Mr. Cooley had not attended some Executive Board meetings, which was true. Notably, Mr. Cooley does not contend that any of the statements in the FAQs were false.

We also agree with the Trial Court that Mr. Cooley failed to establish actual harm as a result of the alleged defamatory statements. It is true that Mr. and Mrs. Stevens testified that Mr. Marrone's and Ms. Volla's statements in the FAQs initially contributed to their forming a negative opinion of Mr. Cooley and influenced how they voted on matters such as the special assessment addressed in the FAQs. However, Mr. and Mrs. Stevens credibly testified that they later changed their opinions of Mr. Cooley *for the better*. As the Trial Court explained, Mr. "Stevens testified that Mr. Cooley is 'someone that [he] trust[s] in terms of his ability to stick to facts and research' and that [Mr.] Cooley is a 'good guy, trying to do the best thing that he can'" and "Mrs. Stevens testified that Cooley is 'someone trustworthy . . . [a] decent, honest, good human being.'" Trial Ct. Op., 11/14/18, at 9 (citations omitted). In addition, the record shows that Mr. Cooley was re-elected to the Executive Board following the statements at issue and continues to serve as an Executive Board member. Mr. Cooley presented no evidence that he suffered pecuniary loss or that his reputation within the community was harmed.

Therefore, we conclude that the Trial Court properly dismissed Mr. Cooley's defamation claim.

32

### 5. Misconduct Accusations

In its September 6, 2017 Order, the Trial Court struck certain portions of Mr. Cooley's filings and ordered that Mr. Cooley "refrain from accusations of misconduct, criminal, and quasi criminal conduct in public filings without protection." Trial Ct. Order, 9/6/17, at 2. Mr. Cooley contends that this prohibition was unconstitutionally vague because the Trial Court did not explain the meaning of "misconduct" or what type of "protection" Mr. Cooley was required to place over his court filings to avoid violating the Order. He further contends that the Order was an unconstitutional prior restraint because it prohibited him from engaging in free speech before the speech even occurred. We disagree.

Mr. Cooley cites no authority to support his contention that the Trial Court's Order was unconstitutionally vague and violated his First Amendment rights. Moreover, when a party moves for a protective order, as Mr. Marrone did here, the Trial Court "may make any order which justice requires to protect a party or person from unreasonable annoyance, embarrassment, oppression, burden or expense." Pa. R.C.P. No. 4012(a). "Whether to grant or deny the motion [for a protective order], and what kind . . . of protective order[] to issue[,] are matters that lie within the sound judicial discretion of the [Trial C]ourt." *Allegheny W. Civic Council, Inc. v. City Council*, 484 A.2d 863, 866 (Pa. Cmwlth. 1984). A reviewing court may not overturn such an order absent an abuse of discretion. *Id.*

We conclude, based on our review of the record, that the Trial Court properly struck certain portions of Mr. Cooley's filings and issued the admonition in its September 6, 2017 Order. The Trial Court found that Mr. Cooley had repeatedly lodged false accusations of criminal conduct against Mr. Marrone and Ms. Volla,

33

and particularly Mr. Marrone, over the course of this litigation.[16]  We conclude that the Trial Court did not abuse its discretion in granting the protective order.

## 6.  Second Amended Complaint

Next, Mr. Cooley argues that the Trial Court erred in striking the Second Amended Complaint for a technical violation.  Pennsylvania Rule of Civil Procedure No. 126 provides that "[t]he rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable."  Our Court has explained that "[t]he purpose of this liberal policy is to give parties the full opportunity to plead their cause of action and not turn them out of court for technical errors, for it is always desirable to dispose of litigation on the merits when possible." *Dep't of Transp. v. Pa. Indus. for Blind & Handicapped*, 886 A.2d 706, 715 n.13 (Pa. Cmwlth. 2005).

---

[16] At the September 5, 2017 hearing, the Trial Court stated:

These are extreme measures that I'm taking unfortunately because I have to. Anyone who reads over [Mr. Marrone's] deposition [transcript] will come to . . . the eventual conclusion that this is warfare; this is not litigation.  And that line between discovery and a physical fist fight is razor thin.

And I hope that somebody in this room, particularly counsel for the parties, understands that this . . . is inappropriate behavior, that this is so out of hand as to be almost ridiculous.  I have never had to do this in 26 years as a judge.  I haven't had to do anything close to this in 26 years as a judge.  And the fact that I have to do it is to me very unfortunate.

. . . .

. . . [A]t some point [the] Court has to step in to provide oversight and issue rulings as necessary to prevent abuse.  The plaintiff may have the greatest case in the world. I don't know if you do or don't.  Your client may have been completely unjustifiably treated.  And we're going to find that out.  But this behavior just has to stop. . . .

N.T., 9/5/17, at 65-67.

34

In his Second Amended Complaint, Mr. Cooley sought to bring additional causes of action against Mr. Marrone for fraud, civil conspiracy, and civil trespass based on evidence obtained during discovery. Mr. Cooley claimed that this new evidence established that the Roof Deck and Parking Space Amendments were fraudulently adopted. Mr. Cooley argues that he was permitted to amend his Complaint under Pennsylvania Rule of Civil Procedure No. 1033(a), which provides:

> A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, add a person as a party, correct the name of a party, or otherwise amend the pleading. *The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. . . .*

Pa. R.C.P. No. 1033(a) (emphasis added). Rule 1033(b) further provides that "[a]n amendment may be made to *conform the pleading to the evidence offered or admitted.*" Pa. R.C.P. No. 1033(b) (emphasis added).

We conclude that the Trial Court properly struck Mr. Cooley's Second Amended Complaint because he filed it without either "consent of the adverse party or by leave of court" as required by Rule 1033(a). The Trial Court's March 1, 2017 Order directed Mr. Cooley to file a response to Mr. Marrone's Preliminary Objections within 20 days, but Mr. Cooley instead filed the Second Amended Complaint adding new causes of action. Contrary to his assertion on appeal, Mr. Cooley was not denied the right to seek leave to amend his Complaint; rather, he was advised that he must comply with the Rules of Civil Procedure in the event that he sought such leave.

Moreover, even if the Trial Court could excuse Mr. Cooley's improper filing, it nonetheless found that "the three [new] causes of action, fraud, conspiracy and

35

trespass, appear to be barred by the gist of the action doctrine." Trial Ct. Order, 7/24/17, at 2 n.1. As Mr. Cooley acknowledges in his principal brief, "the Second Amended Complaint sought to bring a claim against [Mr.] Marrone for fraud as a result of the discovery obtained which showed that . . . the [Roof Deck and Parking Space] Amendments were fraudulently recorded." Mr. Cooley's Br. at 63. However, as discussed in Section 3 of this Analysis, *supra*, all of Mr. Cooley's claims challenging the validity of the Roof Deck and Parking Space Amendments were barred by the one-year statute of limitations. Therefore, we agree with the Trial Court that Mr. Cooley's newly asserted causes of action, alleging that the Roof Deck and Parking Space Amendments were fraudulently recorded, were likewise time-barred. *See Dep't of Transp.*, 886 A.2d at 715 ("[A]n amendment [to a complaint] which introduces a new cause of action, i.e., [a] new theory, *will not be permitted after the statute of limitations of that cause of action has expired*.") (emphasis added).

Therefore, we conclude that the Trial Court did not err in striking Mr. Cooley's Second Amended Complaint.

### 7. Appointment of Special Masters

Mr. Cooley also contends that the Trial Court abused its discretion by requiring him to pay for private attorneys acting as special masters to resolve the parties' discovery disputes and preliminary objections. Mr. Cooley claims that after the Trial Court found the first special master, Judge Lehrer, to be ineffective, the Trial Court appointed Mr. Phillips, again ordering Mr. Cooley to pay half of the fees. Mr. Phillips charged $400 per hour and received nearly $9,000 in compensation for his work, half of which was paid by Mr. Cooley.

36

Our "[c]ourts historically possess the inherent authority to appoint masters to assist them in performing various functions." *In re City of Pittsburgh*, 600 A.2d 630, 632 (Pa. Cmwlth. 1991). Here, the Trial Court appointed special masters to assist with discovery disputes due to the large quantity of motions filed by the parties. The Trial Court explained that "[t]he appointment of discovery/settlement masters was necessary in the instant matter since the parties hotly disputed what discovery was appropriate." Trial Ct. Op., 1/25/19, at 2. The Trial Court believed that such appointments were necessary to contain the parties' obvious "hostilities" and to "achieve expeditious resolution of the parties' dispute." *Id.*; *see* N.T., 9/5/17, at 65-67. Moreover, the Trial Court explained that it was authorized, under its own administrative rules, to appoint special masters if it "deem[ed] [such appointment] appropriate for the supervision of discovery and for mediation." Trial Ct. Op., 1/25/19, at 2. Furthermore, Mr. Cooley fails to identify any record evidence to support his accusation that Judge Lehrer was dismissed due to perceived "ineffectiveness." Therefore, we conclude that the Trial Court did not abuse its discretion in appointing the special masters in this case.

In any event, the Trial Court correctly determined that Mr. Cooley waived his challenges to the Orders appointing special masters because he failed to object at the time of the appointments. *See* Pa. R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Allegheny W. Civic Council*, 94 A.3d at 456 (same).

### 8. Recusal

Finally, Mr. Cooley argues that the Trial Court's statements and rulings throughout this litigation, in the aggregate, presented the appearance of bias against Mr. Cooley. According to Mr. Cooley, the Trial Court treated the motions to strike

37

his filings differently than the motions to strike Defendants' filings and consistently ruled against him while ruling in favor of Defendants.

In denying the Motion for Recusal, the Trial Court stated that "[w]hile the court did strike paragraphs of [Mr. Cooley's] pleadings containing the allegations of misconduct, a review of the numerous rulings made shows that the allegations were scandalous, impertinent[,] and not necessary to prove [his] claims." Trial Ct. Order, 8/3/18, at 1 n.1. The Trial Court further stated that it was "able to assess this case in an impartial manner, free of personal bias or interest in the outcome." *Id.*

"It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice, or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." *Com. v. White*, 734 A.2d 374, 383-84 (Pa. 1999). We conclude that Mr. Cooley failed to meet his burden in this case, as he has not pointed to any evidence of bias or prejudice so as to call the trial judge's partiality into question. Mr. Cooley was not entitled to a new trial judge simply because the assigned judge ruled against Mr. Cooley on many of his motions. A party's dissatisfaction with adverse rulings is insufficient to prove a trial judge's bias. *See Cellucci v. Laurel Homeowners Ass'n*, 142 A.3d 1032, 1045 (Pa. Cmwlth. 2016) ("[A]n adverse ruling by a trial judge does not, by itself, indicate partiality.").

We conclude, based on our review of the record, that the Trial Court did not abuse its discretion in denying Mr. Cooley's Motion for Recusal.

## Conclusion

Accordingly, we affirm the Trial Court's Order.

_____
ELLEN CEISLER, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

38

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ronald P. Cooley, individually and  :
derivatively on behalf of the  Lofts at :
1234 Condominium Association,  :
            Appellant         :
                             :
          v.                :  No. 1668 C.D. 2018
                             :
Lofts at 1234 Condominium     :
Association, Thomas Marrone, and :
Echo Volla                 :

# **O R D E R**

AND NOW, this 13th day of March, 2020, the Order of the Court of Common

Pleas of Philadelphia County, entered November 14, 2018, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge